# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 38012

JONI KEPLER-FLEENOR, an individual, )
KISTIN FLEENOR, BLUE SKY )
MANAGEMENT, LLC, GRANT NEIBAUR, )
BARBARA NEIBAUR, ART HERNING, )
CLAIRE HERNING, JERRY WAGEMAN, )   Pocatello, August 2011 Term
CENIA WAGEMAN, DAVID NEIBAUR, )
DOUGLAS NEIBAUR, LINDA NEIBAUR, )   2012  Opinion No.  18
FRITZ MURDOCK, PATTIE MURDOCK, )
DORAN WEST, CONNIE WEST, KIM )   Filed:  January 24,  2012
WEST, KERRY WEST, RICK GREEN, )
KELLY GREEN, GARY KILLPACK, )   Stephen W. Kenyon, Clerk
DIANE KILLPACK, TERRY EKBERT, )
LORRAINE EKBERT, RANDY STEED, )
DONNA STEED, JERRY NAVE, KELLY )
NAVE, BRAD NEIBAUR, DIANE )
NEIBAUR, WES FIFE, KEVIN FLEENOR, )   SUBSTITUTE OPINION.  THE
RICK KRUMENACKER, SHAUNA )   COURT'S PRIOR OPINION
KRUMENACKER, BRIAN MORDAUNT, )   DATED NOVEMBER 10, 2011
PAM MORDAUNT, STEVE AUGUSTIN, )   IS HEREBY WITHDRAWN
LAURIE AUGUSTIN, )
   )
   Plaintiffs-Appellants, )
   )
v. )
   )
FREMONT COUNTY, )
   )
   Defendant-Respondent. )
_____ )

Appeal from the Seventh Judicial District of the State of Idaho, Fremont County.
Hon. Gregory W. Moeller, District Judge.

The judgment is affirmed.  Costs are awarded to respondent.

Holden, Kidwell, Hahn & Crapo, PLLC, Idaho Falls, for appellants.  Shan B.
Perry argued.

Nelson Hall Perry Tucker, PA, Idaho Falls, for respondent. Blake Hall argued.
_____

W. JONES, Justice

## I. NATURE OF THE CASE

Appellants in this case contend that the district court committed error when it determined that an unnamed road in their subdivision is public by common law dedication.  Because the subdivision plat unambiguously dedicates the road, the district court's ruling is affirmed.

1

## II. FACTUAL AND PROCEDURAL BACKGROUND

Appellants are property owners in Division III of the Sawtelle Mountain Subdivision of Fremont County, Idaho. The Sawtelle Subdivision plat was created and recorded in 1994. The dispute in this case is whether a short, unnamed road on the plat has been publicly dedicated. The plat depicts a C-shaped road entering and exiting the east border of the subdivision. The sixty foot wide disputed road is shown running directly from the western apex of the C-shaped road out of the subdivision, connecting with a neighboring subdivision to the west. Although the C-shaped road does not intrude on any lots in the subdivision, the disputed road straddles two lots (the "road lots"), one of which belongs to Joni Kepler-Fleenor and Kistin Fleenor, and the other of which belongs to Blue Sky Management, LLC, all of whom are appellants in this case.

According to Appellants, heavy construction traffic heading into and out of the Stonegate Subdivision was bothersome and was damaging the disputed road. The owners of the road lots installed a berm and a gate to block traffic on the disputed road in 2005, but the County removed it in 2009, believing the disputed road to be public.

After the County removed the road obstructions, Appellants filed this lawsuit seeking a judgment declaring the road to be private. The district court granted the County's Motion for Summary Judgment, holding that the plat unambiguously shows the disputed road to be dedicated to public use. Several weeks later, Appellants filed a Motion to Reconsider along with an affidavit by Arnold W. Woolstenhume, the engineer who prepared the Sawtelle Subdivision plat, which the County moved to strike. The court denied the Motion to Reconsider and struck the Woolstenhume affidavit. It reasoned that, although it could consider new evidence presented with a Motion to Reconsider, the affidavit was still untimely under I.R.C.P. 56(c), violated the parol evidence rule, and was inadmissible speculation.

Appellants timely appealed to this Court, where they contend that the affidavit should not have been struck because they were unaware of what Woolstenhume would testify to until after the filing deadline. They also assert that the plat does not clearly dedicate the disputed road to the public, but that there is at least a question of fact as to whether the plat dedicated the road to landowners within the Sawtelle Subdivision.

## III. ISSUES ON APPEAL

1.      Whether the district court properly struck the affidavit of Arnold W. Woolstenhume?

2.      Whether the Sawtelle Subdivision plat unambiguously dedicates the disputed road to the public?

3.      Whether Fremont County is entitled to attorney's fees on appeal?

IV. STANDARD OF REVIEW

Courts are empowered to adjudicate actions for declaratory relief. I.C. §§ 10-1201, 1202. They review motions for summary judgment in such actions as they would in other civil suits. *See Schneider v. Howe*, 142 Idaho 767, 770–71, 133 P.3d 1232, 1235–36 (2006) (applying I.R.C.P. 56(c) in a declaratory-relief action).

This Court applies the same standard as the district court when ruling on a motion for summary judgment. *Wesco Autobody Supply, Inc. v. Ernest*, 149 Idaho 881, 890, 243 P.3d 1069, 1078 (2010). Summary judgment is appropriate if "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). When considering a motion for summary judgment, this Court liberally construes the record in a light most favorable to the party opposing the motion and draws all reasonable inferences in that party's favor. *King v. Lang*, 136 Idaho 905, 909, 42 P.3d 698, 702 (2002).

## V. ANALYSIS

### A. Although the Motion for Reconsideration Was Timely, the District Court Correctly Struck the Woolstenhume Affidavit as Inadmissible Parol Evidence

Appellants attached an affidavit by Woolstenhume, the engineer who prepared the Sawtelle Subdivision plat, to their Motion to Reconsider. In the affidavit, Woolstenhume explains why he believes various markings on the plat demonstrate that the disputed road was not dedicated to the public. It also notes that, according to the plat, the total acreage of the roads including the disputed road would exceed the amount of space identified as public right-of-way in the plat. The district court initially stated that it could consider the Woolstenhume affidavit under I.R.C.P. 11(a)(2)(B), but nonetheless struck it as untimely under I.R.C.P. 56(c), inadmissible under the parol evidence rule, and inadmissible speculation.

#### 1. The Affidavit Was Timely Under I.R.C.P. 11(a)(2)(B)

The district court correctly concluded that, under I.R.C.P. 11(a)(2)(B), it could not strike the Woolstenhume affidavit as untimely since it was part of a motion to reconsider. Idaho Rule of Civil Procedure 11(a)(2)(B) permits parties to move the court to reconsider an interlocutory order until fourteen days after a final judgment has been entered.[1] The court must consider new

---

[1] I.R.C.P. 11(a)(2)(B) provides in relevant part:

> A motion for reconsideration of any interlocutory orders of the trial court may be made at any time before the entry of final judgment but not later than fourteen (14) days after the entry of the final judgment. A motion for reconsideration of any order of the trial court made after entry of final judgment may be filed within fourteen (14) days from the entry of such order . . . .

evidence bearing on the correctness of a summary judgment order if the motion to reconsider is filed within fourteen days after a final judgment issues. *See PHH Mortg. Servs. Corp. v. Perreira*, 146 Idaho 631, 635, 200 P.3d 1180, 1184 (2009); *see also Coeur d'Alene Mining Co. v. First Nat'l Bank of N. Idaho*, 118 Idaho 812, 822, 800 P.2d 1026, 1036 (1990) (stating that a party could have brought a deposition to the court's attention after a summary judgment hearing under I.R.C.P. 11(a)(2)(B)). Appellants filed their Motion to Reconsider on March 31, 2010, two days after the final judgment was issued.[2] It was therefore timely and properly before the court.

The district court applied the wrong legal standard when it went on to strike the affidavit as untimely under I.R.C.P. 56(c). This rule requires parties resisting motions for summary judgment to file affidavits within fourteen days of the hearing.[3] *Doe v. Idaho Dep't of Health & Welfare*, 150 Idaho 491, 495, 248 P.3d 742, 746 (2011) (citing I.R.C.P. 56(c)). Because Appellants filed the affidavit weeks after the hearing, they undoubtedly would have violated this rule if it applied. Rule 56(c), however, governs motions for summary judgment. The Woolstenhume affidavit accompanied a motion for reconsideration of the court's summary judgment order, not the motion for summary judgment. Rule 11(a)(2)(B) therefore applies instead because it is the rule governing motions for reconsideration. The district court was obligated to consider this new evidence. *Barmore v. Perrone*, 145 Idaho 340, 344, 179 P.3d 303, 307 (2008).

> 2. *The District Court Correctly Struck the Woolstenhume Affidavit as Inadmissible Parol Evidence*

The district court also struck the Woolstenhume affidavit on the alternative ground that it violated the parol evidence rule. Appellants contend that parol evidence is always admissible to show the purported donor's intent to dedicate or not to dedicate land for public use.

Whether a common law dedication has occurred is an issue of law. *Ponderosa Homesite Lot Owners v. Garfield Bay Resort, Inc.*, 143 Idaho 407, 409, 146 P.3d 673, 675 (2006). When a written instrument is complete on its face and is unambiguous, extrinsic evidence of prior or

---

[2] As the district court observed, the final judgment was not mailed to the parties until April 21, 2010.

[3] I.R.C.P. 56(c) provides in relevant part:

> The motion, affidavits and supporting brief shall be served at least twenty-eight (28) days before the time fixed for the hearing. If the adverse party desires to serve opposing affidavits the party must do so at least 14 days prior to the date of the hearing. The adverse party shall also serve an answering brief at least 14 days prior to the date of the hearing. The moving party may thereafter serve a reply brief not less than 7 days before the date of the hearing.

contemporaneous representations or negotiations are inadmissible "to contradict, vary, alter, add to, or detract from" the instrument's terms. *Howard v. Perry*, 141 Idaho 139, 141, 106 P.3d 465, 467 (2005). For the purpose of the parol evidence rule, plats are complete instruments. Plats must "accurately describe and set forth all the streets, easements, public grounds, blocks, lots, and other essential information." I.C. § 50-1302. In other words, all the essential terms for creating a new subdivision are in each plat.

Accordingly, this Court has held that when deciding whether a dedication occurred, plats are to be interpreted like deeds. *Lattin v. Adams Cnty.*, 149 Idaho 497, 501, 236 P.3d 1257, 1261 (2010). "The inquiry begins by determining whether a deed is ambiguous, which is a question of law subject to free review." *Id.* (citing *Union Pac. R.R. v. Ethington Family Trust*, 137 Idaho 435, 438, 50 P.3d 450, 453 (2002)). Only when a document is ambiguous is parol evidence admissible to discover the drafter's intent. *Porter v. Bassett*, 146 Idaho 399, 404–05, 195 P.3d 1212, 1217–18 (2008). Otherwise, the intention of the parties must be ascertained from the document itself. *Benninger v. Derifield*, 142 Idaho 486, 489, 129 P.3d 1235, 1238 (2006).

If a plat unambiguously does or does not dedicate land, the plain language of the instrument controls. *Lattin*, 149 Idaho at 501, 236 P.3d at 1261. Once someone purchases a lot referencing the plat, the dedication offer has been accepted. An ambiguous plat, on the other hand, equivocates as to whether the owner intended to dedicate the land. *See Porter*, 146 Idaho at 404, 195 P.3d at 1217 (stating that ambiguity arises in a deed when it is "subject to conflicting interpretations" (quoting *Read v. Harvey*, 141 Idaho 497, 499, 112 P.3d 785, 787 (2005)). In those cases, extrinsic evidence would be admissible to show the owner's intent in drafting the plat.

In light of the above, it was correct for the district court to strike the affidavit as inadmissible parol evidence. The only evidence the County offers to support its dedication claim is the Sawtelle Subdivision plat. As explained below in Part V.B, this plat unambiguously dedicates the disputed road to the public. Woolstenhume's affidavit pertains solely to *his* intent when drafting the plat, such as what acreage he believed the road occupied, why he made the disputed road a certain width, why he used certain markings on the plat, and similar matters. His intent is not relevant nor is it evidence of the developer's intent. His affidavit only states his usual practice, since he has no recollection of this particular plat. His affidavit therefore is introduced to vary the terms of an unambiguous instrument, so the court was correct to exclude it.

5

**B.       The Sawtelle Subdivision Plat Unambiguously Makes a Common Law Dedication**

There are two elements of a common law dedication: (1) an offer by the owner unequivocally indicating an intent to dedicate the land; and (2) an acceptance of the offer. *Worley Highway Dist. v. Yacht Club of Coeur d'Alene, Ltd.*, 116 Idaho 219, 224, 775 P.2d 111, 116 (1989).  The parties do not dispute the fact that an offer to dedicate, if made, was accepted when the Appellants' lots were sold with reference to the recorded Sawtelle Subdivision plat. *See Smylie v. Pearsall*, 93 Idaho 188, 191, 457 P.2d 427, 430 (1969) (stating that a dedication is complete when the owner "sells lots by reference to the recorded plat").

The controversy in this case is whether the plat clearly and unequivocally offers to dedicate the disputed road. *Saddlehorn Ranch Landowner's, Inc. v. Dyer*, 146 Idaho 747, 751–52, 203 P.3d 677, 681–82 (2009).  Again, this Court interprets the plat like a deed and will apply the plain language of the deed if it is unambiguous. *Lattin*, 149 Idaho at 501, 236 P.3d at 1261. An instrument is ambiguous if it is subject to conflicting interpretations. *Porter*, 146 Idaho at 404, 195 P.3d at 1217.  Whether an instrument is ambiguous is a question of law subject to free review. *C & G, Inc. v. Rule*, 135 Idaho 763, 765, 25 P.3d 76, 78 (2001).

The plat depicts the disputed road with a label saying "60' road & utility easement."  The owners' certificate states, "The dedicated 60ft. roadway and utility right-of-way will allow sewer, water, electrical, telephone and other utilities to be installed in the right of way."[4] Importantly, the certificate further provides: "All roads are hereby dedicated to the public," and that the developer or the homeowners association will "maintain all roadways until such time as Fremont County accepts said maintenance . . . ."

Regardless of whether the district court should have considered the Woolstenhume affidavit, the plat unambiguously dedicates the disputed road to the public.  The only reasonable interpretation of the phrase "all roads are hereby dedicated to the public" is that the owners intended for all the roads that appear on the plat to be public unless specifically designated otherwise. *See Ponderosa Home Site Lot Owners*, 139 Idaho at 701, 85 P.3d at 677 (finding a dedication where the plat stated that the owners "dedicate to the public, for the use of the public

---

[4] The relevant paragraphs in the owners' certificate state that the subdivision owners certify:

> That all roads are hereby dedicated to the public with right of access being limited by the homeowners association until such times as accepted by Fremont County;
> That the developer/ homeowners association will maintain all roadways until such time as Fremont County accepts said maintenance;
> That the dedicated 60ft. roadway and utility right-of-way will allow sewer, water, electrical, telephone and other utilities to be installed in the right of way.

6

as highways the roads shown upon the plat"); *Deffenbaugh v. Wash. Water Power Co.*, 24 Idaho 514, 514–21, 135 P. 247, 247–48 (1913) (observing that the streets on the plat were public because plat stated that it dedicated "the streets and avenues shown"). Further, this road is sixty feet wide, the same width as the C-shaped public road on the map. Because the disputed road unambiguously appears on the plat, it is a dedicated road.

Appellants argue that the road is private and only merely a utility easement. They note that the road lies on top of two lots, while the C-shaped road does not. It is separated from the C-shaped public road with a solid line, rather than a dashed line that runs through other road intersections. They also point out that the label for the road contains the phrase "utility easement" and that the road itself is filled in with a hatch pattern usually used to designate "easements as described" according to the plat legend.

The disputed road is depicted with cross-hatching, which typically denotes an easement. There are other crosshatched rights of way on the plat, but the key distinction is that the disputed road is labeled as a "road and utility easement" on a plat that dedicates "all roads" to public use, while the other rights of way are labeled only as "utility easements." Further, the road's label by its plain language does not dedicate a utility easement, but instead dedicates a "60' road & utility easement." The owner's certificate also states that the utilities would be installed "in the right of way." The only reasonable way to read this plat is that it identifies a road and a utility easement. The hatch pattern simply shows that the road is on top of a utility easement. The district court correctly held as a matter of law that the disputed road is public by common law dedication.

## C.     Fremont County Is Not Entitled to Attorney's Fees on Appeal

The County requests attorney's fees under I.C. § 12-117. Idaho Code section 12-117(1) provides:

> Unless otherwise provided by statute, in any administrative proceeding or civil judicial proceeding involving as adverse parties a state agency or political subdivision and a person, the state agency or political subdivision or the court, as the case may be, shall award the prevailing party reasonable attorney's fees, witness fees and other reasonable expenses, if it finds that the nonprevailing party acted without a reasonable basis in fact or law.

This Court may therefore award fees if the nonprevailing party "acted without a reasonable basis in fact or law." *Cantwell v. City of Boise*, 146 Idaho 127, 138, 191 P.3d 205, 216 (2008). No fees are available against a party that presents a "legitimate question for this Court to address." *Lane Ranch P'ship v. City of Sun Valley*, 145 Idaho 87, 91, 175 P.3d 776, 780 (2007).

Fremont County is not entitled to attorney's fees on appeal under I.C. § 12-117 because the appeal presents a "legitimate question for this Court to address." *Id.* The plat exhibits some features suggesting that the owners may not have intended to dedicate the road. As a result, Appellants acted with a reasonable basis in bringing their appeal.

Fremont County also requests attorney's fees under I.C. § 12-121, which permits fee awards to prevailing parties in "any civil action." This request is denied because I.C. § 12-117 is the exclusive means for awarding attorney's fees for the entities to which it applies. *See Potlatch Educ. Ass'n v. Potlatch Sch. Dist. No. 285*, 148 Idaho 630, 635, 226 P.3d 1277, 1282 (2010).

## VI. CONCLUSION

The district court correctly struck the Woolstenhume affidavit as inadmissible extrinsic evidence. The court also properly concluded as a matter of law that the disputed road is public by common law dedication. The judgment is affirmed. Costs but not attorney's fees are awarded to Fremont County.

Chief Justice BURDICK and Justice EISMANN, CONCUR.

J. JONES, J., concurring in part and dissenting in part.

I concur in Part V.A.1 of the Court's opinion, but dissent with regard to Parts V.A.2 and V.B. It is my view that the plat is ambiguous as to the status of the "60 ft. roadway and utility right-of-way" ("Easement"), and that the Woolstenhume affidavit should not have been excluded based upon the parol evidence rule.

While the Court correctly states the law applicable to a common law dedication, it does not appear that the plat clearly and unequivocally offers to dedicate the Easement as a public street or road. There are simply too many questions regarding the intent of the property owners with respect to the Easement when they signed the plat. The factors that make their intent ambiguous are:

(1)     The roads dedicated to the public on the plat are named (Sawtelle Peak Road and Huckleberry Loop), while the Easement bears no name. Section 1.03.100, Appendix L, of the Fremont County Development Code states that a plat shall contain "[t]he names of all streets." Further, Section 1.03 requires that, "All final plats submitted shall be prepared in compliance with Chapter 13, Title 50 of the Idaho Code." Idaho Code § 50-1304(2)(b) requires that a plat show "each street named." If an easement or right-of-way is not given a name on a plat, it is likely not intended to be a street.

8

(2) I.C. § 50-1304, which is contained in Chapter 13, Title 50 and which specifies the essentials of a municipal plat, utilizes definitions set out in I.C. § 50-1301. That code section contains definitions for "easement," "private road," "public right-of-way," "public street," and "street." Each of those definitions contains different elements. "Easement" is "[a] right of use, falling short of ownership, and usually for a certain stated purpose." I.C. § 50-1301(2). On the other hand, "public street" is "a road, thoroughfare, alley, highway or bridge under the jurisdiction of a public highway agency." The plat does not unequivocally tell us which definition applies to the Easement. On the plat map, the Easement is called "road & utility easement," while on the owners' certificate of dedication, it is called "roadway and utility right-of-way."

(3) The owners' certificate of dedication states that the right-of-way "will allow sewer, water, electrical, telephone and other utilities to be installed in the right of way." Were this a public road, that statement would be unnecessary. Numerous state statutes provide that public utility lines may be installed in public roads, streets and highways. I.C. § 62-1101 (natural gas lines); I.C. § 62-705 (electric power lines); I.C. § 62-701 (telephone lines); I.C. § 30-802 (water lines); I.C. § 40-2308 (gas and water lines in cities). If the Easement is truly an easement and not a public road, the language has meaning. If the Easement is truly a public street, the language is superfluous and meaningless. To give meaning to the language in the dedication, it must be considered an easement.

(4) The owners' certificate on the plat, which contains the dedications intended by the owners, states "that all roads are hereby dedicated to the public with right of access being limited by the homeowners association until such time as accepted by Fremont County." The owners' certificate deals with the Easement in a separate statement, saying "that the dedicated 60 ft. roadway and utility right-of-way will allow sewer, water, electrical, telephone and other utilities to be installed in the right of way." The fact that dedicated roads and the Easement are dealt with separately in the owners' certificate of dedication indicates an intention by the owners to draw a distinction between them.

(5) The legend on the plat depicts an "easement as described" with two parallel lines connected by crosshatch marks. The Easement is shown with such crosshatching. No dedicated public roads in the subdivision contain crosshatching, while all dedicated easements do. Further, the roads clearly dedicated to public use do not overlay portions of lots, while the Easement does, crossing over the south 30 feet of Lot 4 and the north 30 feet of Lot 3. In *Lattin v. Adams*

9

*County*, 149 Idaho 497, 236 P.3d 1257 (2010), this Court declined to find a public road dedication where the alleged road did not comport with the map legend. In that case the plat depicted Burch Lane but did not identify it as a public easement or right-of-way. *Id.* at 499, 236 P.3d at 1259. According to the Court:

> The map legend in this case depicts a style of dotted line for easements and public rights-of-way that is different from the style indicating a centerline of a private road. The line portraying Burch Lane on the map is a road centerline, not a public street or right-of-way. The map also specifically labels access for utility easements applicable to other private roads but does not include such label for Burch Lane. Accordingly, there has been no public dedication.

*Id.* at 501, P.3d at 1261. In this case, the Easement is depicted with crosshatching, while the roads clearly dedicated to public use are not crosshatched. Again, the part of the owners' certificate dedicating it as an easement is separate and apart from the part of the owners' certification dedicating public roads.

(6)     The language used for the Easement, both per the designation on the plat and in the owners' certificate, lends itself to differing interpretations. On the plat map it is called "60' road & utility easement" and in the owners' certificate it is called "60 ft. roadway and utility right-of-way." Either description lends itself to two different interpretations. On the plat, we could have either a road, as well as a utility easement, or we could have an easement for road and utility purposes. The latter interpretation appears to be more reasonable because the map legend indicates that easements are depicted by crosshatching and the crosshatching on the Easement is 60 feet in width. Since "60" appears before both "road" and "utility" on the plat map, all of those words modify "easement." In the owners' certificate we could have either a roadway, as well as a utility right-of-way, or we could have a right-of-way for roadway and utility purposes. Again, the latter interpretation is more reasonable because the "60 ft." at the beginning of the phrase pertains to both "roadway" and "utility" and all three words modify "right-of-way."

(7)     There is a difference between the plat map, which uses the word "road," and the owners' certificate of dedication which uses the word "roadway." The wording of the owners' certificate, which states the intention of the owners with regard to dedication, takes precedence over any conflicting language on the plat map. It is obvious that there is a difference between "road" and "roadway," and it is of note that the owners did not dedicate any roadways to public road uses, choosing instead to dedicate a roadway and utility right-of-way. On the other hand, the only other use of the word "roadway" anywhere on the plat does lend some support to the district

10

court's holding. Although not couched in dedicatory language, the owners' certificate says "that the developer/homeowners association will maintain all roadways until such time as Fremont County accepts said maintenance." It is not clear why Fremont County would accept maintenance of the Easement unless it was for purposes of a road.

With the foregoing inconsistencies and ambiguities, summary judgment is simply inappropriate. This is a matter that should be determined following the introduction of evidence at trial.

Because it appears the plat is ambiguous as to the status of the Easement, I believe that parol evidence is appropriate to determine the intent of the owners. Therefore, I do not agree that the Woolstenhume affidavit should have been excluded based upon the parol evidence rule. However, the Court correctly notes that the affidavit merely states the affiant's intent when drafting the plat. He does not state that he drafted the plat to comply with instructions given by the owners, or that the plat was drafted in accordance with industry standards or practices. Woolstenhume's own intentions are not relevant, while the owners' intentions are or while accepted industries standards and practices might well be. The affidavit was excluded for the wrong reason, but its exclusion may well have been justified on other grounds.

Justice HORTON CONCURS.

11